**United States District Court**

For the Northern District of California

1
2
3
4
5              UNITED STATES DISTRICT COURT
6             NORTHERN DISTRICT OF CALIFORNIA
7
8   LARRY TOTTEN, *et al.*,                    No. C-03-1399 CW (EMC)
9           Plaintiffs,
10      v.                               **REPORT AND RECOMMENDATION**
                                         **RE PLAINTIFFS' MOTION FOR**
11  HAWORTH IRRIGATION, *et al.*,         **DEFAULT JUDGMENT**
                                         **(Docket No. 53)**
12          Defendants.
    _____/
13
14
15          Plaintiffs filed suit against Defendants Haworth Irrigation, Irrigation Incorporated, Golden

16  State Landscape Company ("Golden State"), and Marshall Gordon Haworth, asserting claims for (1)

17  breach of contract and (2) mandatory injunction.  *See* Docket No. 40 (Plaintiffs' fourth amended

18  complaint, hereinafter "4AC").  Golden State was dismissed from the case on November 11, 2004.

19  *See* Docket No. 41.  Plaintiffs thereafter completed service of the summons and complaint on the

20  remaining Defendants.  *See* Docket Nos. 46, 47, 49.  After Defendants failed to respond to Plaintiffs'

21  complaint, default was entered on April 19, 2005.  *See* Docket No. 51.  Plaintiffs subsequently filed a

22  motion for default judgment, which Judge Wilken referred to the undersigned for a report and

23  recommendation.

24          Having considered Plaintiffs' brief and accompanying submissions, the Court hereby

25  recommends that the motion for default judgment be GRANTED.

26                **I.   FACTUAL & PROCEDURAL BACKGROUND**

27          Plaintiffs initially filed their suit on April 2, 2003.  *See* Docket No. 1.  Thereafter, Plaintiffs

28  amended their complaint several times.  The fourth amended complaint was filed on October 19,

United States District Court

For the Northern District of California

2004.  *See* Docket No. 40.  According to the complaint, in August 1987, Haworth Irrigation and Mr. Haworth entered into an agreement with a union called the Northern California District Council of Laborers .[1]  *See* 4AC ¶ 17.  Pursuant to that agreement, Haworth Irrigation and Mr. Haworth agreed to make contributions into several trust funds, which are employee benefit plans under the Employee Retirement Income Security Act ("ERISA").  *See id.* ¶¶ 6, 20.  Haworth Irrigation and Mr. Haworth, however, failed to make the required contributions; in addition, they failed to submit to an audit so that Plaintiffs could determine the amount of any delinquency.  *See id.* ¶ 22.  Irrigation Incorporated is also responsible for the above failures because Mr. Haworth is the alter ego of Irrigation Incorporated, and the entity form was adopted in order to avoid contractual relations.[2]  *See id.* ¶¶ 12-13, 19; *see also id.*, Ex. A (Memorandum Agreement) (providing that Haworth Irrigation and Mr. Haworth were bound by the agreement "regardless of the name, style or method of organization of any individual employer entity and specifically applies to any company, firm, or corporation in the construction industry with which or to which the undersigned has any connection of any nature or kind whatsoever").

On November 11, 2004, Plaintiffs asked Judge Wilken for leave to serve Defendants by publication.  *See* Docket No. 42.  That motion was granted on December 15, 2004.  *See* Docket No. 45.  The order provided that service of the summons by publication was appropriate and also required service of the summons and complaint (as well as the order itself) on Defendants at the last known Post Office Box address and to the residential or business address if ascertained before expiration of the time prescribed for publication of the summons.  On December 16, 2004, Plaintiffs

---

[1] The agreement was actually between Haworth Irrigation (with Mr. Haworth signing as "owner-partner") and the union.  However, as demonstrated by the evidence submitted by Plaintiffs, Haworth Irrigation is a sole proprietorship doing business under Contractor's License No. 294242, which is the license number for Mr. Haworth.  *See* 4AC, Ex. A; Leigh Decl., Ex. B; *see also id.*, Ex. A at 23 (deposition of Mr. Haworth's son) (stating that Haworth Irrigation is a sole proprietorship).  In other words, Haworth Irrigation and Mr. Haworth are one and the same.  *See* Black's Law Dictionary 1398 (7th ed. 1999) (defining "sole proprietorship" as "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity").

[2] Based on evidence submitted by Plaintiffs, it appears that Irrigation Incorporated was dissolved as of February 1, 2003.  *See* Leigh Decl., Ex. C.

**United States District Court**

For the Northern District of California

1  served Defendants by mail at the last known address.  *See* Docket Nos. 46-47.  Service of the

2  summons by publication was completed by February 1, 2005.  *See* Docket No. 49.

3      After Defendants failed to respond, Plaintiffs asked for entry of default, which was issued on

4  April 19, 2005.  *See* Docket No. 51.  Plaintiffs subsequently moved for default judgment against

5  Defendants.

6                                              **II.   DISCUSSION**

7  A.   Timeliness of Plaintiffs' Motion for Default Judgment

8      As a preliminary matter, the Court notes that Plaintiffs did not timely file their motion for

9  default judgment.  In an order filed on April 25, 2005, Judge Wilken instructed Plaintiffs to file their

10 motion for default judgment within thirty days.  *See* Docket No. 52.  Although Plaintiffs failed to do

11 so, in the interest of justice and in the absence of any prejudice to Defendants because of the late

12 filing of the motion for default judgment, this Court shall still provide a report and recommendation

13 on the merits of Plaintiffs' motion.

14 B.   Service of Process

15     In deciding whether to grant or deny a default judgment, a court must first "assess the

16 adequacy of the service of process on the party against whom default is requested."  *Board of*

17 *Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS

18 19065, at *2 (N.D. Cal. Jan. 2, 2001).  In the instant case, Plaintiffs served the summons and

19 complaint on Defendants by publication as well as by mail at the last known address.  Judge Wilken

20 expressly permitted this service after receiving briefing on the matter.  Consequently, and consistent

21 with Judge Wilken's prior ruling, the Court concludes that service of process on Defendants was

22 sufficient.

23 C.   *Eitel* Factors and Default Judgment

24     Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter judgment against a

25 defendant against whom a default has been entered.  The determination to grant or deny a motion for

26 default judgment is within the trial court's discretion.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092

27 (9th Cir. 1980).  Factors to guide a court's discretion include:

28

3

**United States District Court**

For the Northern District of California

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, upon entry of default, the factual allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

As Plaintiffs argue in their motion for default judgment, the majority of the above factors weigh in favor of default judgment. For example, if the motion for default judgment were to be denied, then Plaintiffs would likely be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claim."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Notably, evidence in the record indicates that Mr. Haworth has had knowledge of this lawsuit but has tried to evade responsibility. *See generally* Leigh Decl., Ex. A (deposition of Mr. Haworth's son). Also, the sum of money at stake in the action is appropriate, tailored to the specific misconduct of Defendants. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Furthermore, because Defendants have not filed an answer to Plaintiffs' complaint, there is little to suggest that there is a possibility of a dispute concerning material facts. Finally, it is unlikely that Defendants' default was due to excusable neglect given that Plaintiffs served not only the summons and complaint but also the request for entry of default and motion for default judgment on Defendants (at the last known address) but still received no response. More important, it is unlikely that the default was due to excusable neglect given that Mr. Haworth has had actual knowledge of the lawsuit. Mr. Haworth's son testified at a deposition that he and his father live at the same dwelling and that he told his father about the lawsuit when it was first filed. *See*

**United States District Court**

For the Northern District of California

1   Leigh Decl., Ex. A at 29-31, 84-85 (deposition of Mr. Haworth's son).  (In their original complaint,

2   Plaintiffs mistakenly named Mr. Haworth's son as a defendant instead of Mr. Haworth.)

3       The only factors that deserve closer analysis are the second and third factors -- in essence, the

4   legal sufficiency of the complaint.  In their fourth amended complaint, Plaintiffs assert claims for (1)

5   breach of contract and (2) a mandatory injunction.  Because Plaintiffs have alleged -- and the Court

6   must accept as true, *see Televideo,* 826 F.2d at 917 (stating that, upon entry of default, all well-

7   pleaded facts in the complaint are taken as true, except those relating to damages") -- that the trust

8   funds are employee benefit plans under ERISA, Plaintiffs' claim for breach of contract is preempted

9   by ERISA.  *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) (noting that

10  ERISA preempts state law claims that "relate to" employee benefit plans; citing 29 U.S.C. §

11  1144(a)).  As for Plaintiffs' claim for a mandatory injunction, an injunction is a form of relief and

12  not a cause of action.  To the extent that Plaintiffs have properly stated a claim for relief under

13  ERISA, the Court shall consider whether injunctive relief is possible as a remedy.  *See* Part II.E,

14  *infra*.  The first issue, however, for the Court to address is whether Plaintiffs have adequately pled a

15  claim for relief under ERISA.

16      Exhibit A attached to the fourth amended complaint is a copy of the agreement entered into

17  between Haworth Irrigation (signed by Mr. Haworth) and the union.  As discussed in footnote 1,

18  *supra*, Haworth Irrigation is a sole proprietorship owned by Mr. Haworth, and so Haworth Irrigation

19  and Mr. Haworth are one and the same.  The agreement, dated and effective on August 27, 1987,

20  provided that Haworth Irrigation would be bound by the Laborers Master Agreement and any

21  extension or renewal thereof.  The agreement also provided that Haworth Irrigation would be bound

22  by any applicable Trust Agreement.

23      Pursuant to the relevant Master Agreements, Haworth Irrigation was responsible for making

24  contributions to several trust funds, and the trust funds had the right to enforce that obligation in any

25  court of competent jurisdiction if Haworth Irrigation were to become delinquent in the payment of

26  any contribution.  *See* Donida Decl., Exs. A-C.  The Master Agreement for 2002-2006 provided for

27  additional remedies if there were any delinquency on the part of Haworth Irrigation.  *See id.*, Ex. C.

28  More specifically, effective November 1, 2002, *see* Leigh Decl. ¶¶ 20-21 & Ex. D, "[a]ny Individual

United States District Court

For the Northern District of California

1  Employer who is found to be delinquent as a result of an audit will pay and satisfy such delinquency

2  with accrued interest and in addition pay liquidated damages.  All delinquent contributions shall bear

3  simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment.

4  Subject to accounting verification, liquidated damages shall be assessed on delinquent contributions

5  at a flat rate of one hundred and fifty dollars ($150.00) per month . . . ."  Donida Decl., Ex. C.

6  Moreover, pursuant to the relevant Trust Agreements, "[i]f any individual employer defaults in the

7  making of such contributions or payments, and if the Board [of Trustees] consults or causes to be

8  consulted legal counsel with respect thereto, there shall be added to the obligation of the individual

9  employer who is in default, reasonable attorneys fees, court costs and all other reasonable expenses

10  incurred in connection with such suit or claim . . . ."  Leigh Decl., Ex. E.

11     The fourth amendment complaint alleges -- and the Court must accept as true, *see Televideo*,

12  826 F.2d at 917 (stating that, upon entry of default, all well-pleaded facts in the complaint are taken

13  as true, except those relating to damages") -- that Haworth Irrigation failed to make the contributions

14  to the trust funds as required by the agreements.  *See* 4AC ¶¶ 22-23.  Haworth Irrigation also failed

15  to submit to an audit of its books and records so that Plaintiffs could determine the amount of any

16  delinquency.  *See id.* ¶ 22.  Thus, Plaintiffs have successfully stated a claim for relief under ERISA.

17  *See* 29 U.S.C. § 1145 (providing that "every employer who is obligated to make contributions to a

18  multiemployer plan under the terms of the plan or under the terms of a collectively bargained

19  agreement shall, to the extent not inconsistent with the law, make such contributions in accordance

20  with the terms and conditions of such plan or such agreement"); *id.* § 1132(a)(3) (authorizing, *inter*

21  *alia*, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation).

22     Accordingly, the Court finds that the second and third *Eitel* factors, like the other *Eitel*

23  factors discussed above, weigh in favor of default judgment -- at least with respect to Haworth

24  Irrigation and Mr. Haworth.  The only issue remaining is whether there is valid claim asserted

25  against Irrigation Incorporated who was *not* a signatory to the agreement between Haworth Irrigation

26  and the union.

27     The Court concludes that there is not.  Although Plaintiffs alleged in their complaint that Mr.

28  Haworth is the alter ego of Irrigation Incorporated and that the entity form was adopted in order to

United States District Court

For the Northern District of California

1    avoid contractual relations, *see* 4AC ¶¶ 12-13, 19, Plaintiffs have not provided any specific facts or

2    evidence sufficient to pierce the corporate veil under the alter ego theory.  There are no factual

3    allegations asserting, *e.g.*, disregard of corporate form, undercapitalization, co-mingling of funds,

4    and so forth.  The allegation of alter ego rests on a legal conclusion only.  *See Cotton v. Mass. Mut.*

5    *Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (noting that legal conclusions, as opposed to

6    well-pleaded factual allegations, are not deemed admitted as a result of a default); *see also* 10A

7    Wright & Miller, Fed. Prac. & Proc. Civ. 3d § 2688 ("Even after default, . . . it remains for the court

8    to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in

9    default does not admit mere conclusions of law.").  In practical terms, denial of a default judgment

10   against Irrigation Incorporated may make little difference since a judgment against Mr. Haworth

11   could lead to execution against his assets, including any ownership interest in Irrigation

12   Incorporated.[3]

13          Plaintiffs suggest that Irrigation Incorporated should be held liable because the agreement

14   signed by Haworth Irrigation and the union specified that the individual employer would be bound

15   by the agreement "regardless of the name, style or method of organization of any individual

16   employer entity" and that the agreement "*specifically applies to any company, firm, or corporation*

17   *in the construction industry with which or to which the undersigned has any connection of any*

18   *nature or kind whatsoever.*"  4AC, Ex. A (emphasis added).  Absent a demonstration of alter ego

19   liability, this provision should not be read so broadly so as to hold Irrigation Incorporated liable.  The

20   reach of such provision could be boundless.

21          For the foregoing reasons, the Court recommends that Plaintiffs' motion for default judgment

22   be granted as to Haworth Irrigation and Mr. Haworth, but not as to Irrigation Incorporated.

23   D.     Damages

24          Having concluded that default judgment is appropriate in this case, the Court now turns to the

25   issue of damages.  ERISA provides that a court shall award a fiduciary who prevails in a § 1145

26   claim (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to

27

28          [3] Since Irrigation Incorporated was dissolved as of February 1, 2003, there are unlikely to be any assets available whether through Mr. Haworth's ownership of stock or under an alter ego analysis.

**United States District Court**

For the Northern District of California

the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions), (D) reasonable attorney's fees and costs, and (E) other appropriate legal or equitable relief. *See* 28 U.S.C. § 1132(g)(2). Plaintiffs have the burden of "proving up" their damages. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,* No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

      1.    <u>Unpaid Contributions</u>

Because Defendants have not been willing to submit to an audit, Plaintiffs have not been able to determine all of the unpaid contributions owed by Defendants. However, Plaintiffs claim that, based on examination of records from a general contractor, Quality Landscaping, and a project owner, the Salinas High School District, Defendants owe at least $115,279.98 in unpaid contributions. *See* 2d Supp. Donida Decl. ¶¶ 12-13.

      a.    <u>Contribution Rates</u>

Plaintiffs have provided sufficient evidence establishing what the proper hourly contribution rates were during the relevant time period. *See* Donida Decl., Exs. A-C (Master Agreements for years 1996 to 2006); Supp. Donida Decl., Exs. A-C (modifications to Master Agreements); 2d Supp. Donida Decl., Ex. A (modification to Master Agreement). Those rates are as follows:

| Year Beginning | 6/24/96 | 6/30/97 | 6/29/98 | 6/28/99 |
|---|---|---|---|---|
| **Health & Welfare** | 2.24 | 2.24 | 2.24 | 2.24 + 0.30 |
| **Pension/ Annuity** | 2.16 | 2.16 + 0.05 = 2.21 | 2.16 + 0.05 + 0.10 = 2.31 | 2.16 + 0.20 |
| **Vacation & Holiday** | 2.10 | 2.10 | 2.10 + 0.05 + 0.05 = 2.20 | 2.20 |
| **Training & Retraining** | 0.33 | 0.33 | 0.33 | 0.34 |
| **TOTALS** | **$6.83** | **$6.88** | **$7.08** | **$7.44** |

| Year Beginning | 6/26/00 | 6/25/01 | 6/24/02 | 6/30/03 |
|---|---|---|---|---|
| **Health & Welfare** | 2.24 + 0.30 + 0.10 | 2.54 + 0.30 | 3.29 + 0.30 | 3.29 + 0.30 + 0.95 |
| **Pension/ Annuity** | 2.16 + 0.20 + 0.21 | 2.16 + 0.51 | 2.16 + 0.71 | 2.16 + 0.71 |
| **Vacation & Holiday** | 2.20 + 0.01 | 2.28 | 2.28 | 2.28 |
| **Training & Retraining** | 0.34 | 0.34 | 0.34 | 0.34 |
| **TOTALS** | **$7.76** | **$8.13** | **$9.08** | **$10.03** |

*See also* 2d Supp. Bonida Decl., Ex. A (summarizing hourly contribution rates).

        b.    <u>Hours for Quality Landscaping</u>

     Plaintiffs have also provided sufficient evidence establishing the number of hours worked by Defendants' employees with respect to Quality Landscaping from 1999 to 2001.  More specifically, Plaintiffs have provided to the Court the invoices which specify the number of hours worked. *See* Supp. Bonida Decl., Exs. D-F (invoices for 1999 through 2001).  The Court notes that, in totaling these hours, Plaintiffs have not always taken a *consistent* approach to rounding numbers; however, the different approaches have all been reasonable.  Therefore, the total number of hours calculated by Plaintiffs is appropriate.

///

///

///

///

///

///

///

///

///

///

///

**United States District Court**

For the Northern District of California

| 1999 | | 2000 | | 2001 | |
|---|---|---|---|---|---|
| 1/99 | 344.9 | 1/00 | 45.5 | 1/01 | 115.5 |
| 2/99 | N/A | 2/00 | 1120.5 | 2/01 | 218.5 |
| 3/99 | 300 | 3/00 | 57.5 | 3/01 | 394.5 |
| 4/99 | 102 | 4/00 | 291 | 4/01 | 356.5 |
| 5/99 | 56.5 | 5/00 | 228.5 | 5/01 | 657 |
| 6/99 | 225.8 | 6/00 | 361 | 6/0 | 1017.5 |
| 7/99 | 59 | 7/00 | 189.5 | 7/01 | 364.5 |
| 8/99 | 384.5 | 8/00 | 219 | 8/01 | 411.5 |
| 9/99 | 217.5 | 9/00 | 533 | 9/01 | 156 |
| 10/99 | 35 | 10/00 | 545 | 10/01 | 430 |
| 11/99 | 415.5 | 11/00 | 491 | 11/01 | 141.5 |
| 12/99 | 419 | 12/00 | 886 | 12/01 | 466.5 |

*See also* 2d Supp. Bonida Decl., Exs. B-D (summarizing number of hours worked with respect to Quality Landscaping).

   c. <u>Hours for Salinas High School District</u>

   Finally, Plaintiffs have provided sufficient evidence establishing the number of hours worked by Defendants' employees with respect to the Salinas High School District from 2001 to 2003.  More specifically, Plaintiffs have provided to the Court the invoices.  *See* Supp. Bonida Decl., Exs. G-I (invoices for 2001 through 2003).  Most of the invoices specify the number of hours worked; however, some do not.  For those invoices that do not specify the number of hours worked, Plaintiffs have provided an estimate of the number of hours worked.

   The second supplemental Bonida declaration explains how Plaintiffs estimated the number of hours worked.  *See* 2d Supp. Bonida Decl. ¶¶ 9-11.  More specifically, for each month, Plaintiffs took the amount charged to the Salinas High School District and estimated that 33% of that amount was attributable to the cost of labor.  (Plaintiffs determined that 33% was an appropriate figure to use taking into account what it knew about the actual percentage for labor costs for Quality Landscaping and the Salinas High School District.)  Plaintiffs then divided that figure by the average hourly rate

**United States District Court**

For the Northern District of California

1   for landscape workers in Monterey County (where Salinas is located) for the relevant time period.

2   *See id.*, Exs. F-G (wage rates); Supp. Bonida Decl., Ex. B (modification to wage rates).  The Court

3   concludes that Plaintiffs' estimates are reasonable.  *Cf. Brick Mason Pension Trust Fund v.*

4   *Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988) (indicating that, when an

5   employer fails to keep adequate records of hours, plaintiff satisfies its burden of proving damages if

6   it proves that work has been performed and provides sufficient evidence to show amount and extent

7   of work as a matter of just and reasonable inference).

8        In sum, the Court concludes that the total number of hours calculated by Plaintiffs is

9   appropriate.

| 2001 | | 2002 | | 2003 | |
|---|---|---|---|---|---|
| 1/01 | 192.86 (estimate) | 1/02 | N/A | 1/03 | N/A |
| 2/01 | 44.23 (estimate) | 2/02 | N/A | 2/03 | N/A |
| 3/01 | N/A | 3/02 | 160 | 3/03 | N/A |
| 4/01 | N/A | 4/02 | 28.5 | 4/03 | N/A |
| 5/01 | N/A | 5/02 | N/A | 5/03 | N/A |
| 6/01 | N/A | 6/02 | N/A | 6/03 | N/A |
| 7/01 | 272 | 7/02 | N/A | 7/03 | 191.5 |
| 8/01 | N/A | 8/02 | N/A | 8/03 | 71 |
| 9/01 | 486.5 | 9/02 | N/A | 9/03 | N/A |
| 10/01 | 61.5 | 10/02 | N/A | 10/03 | N/A |
| 11/01 | 411.5 | 11/02 | 61 | 11/03 | 471.47 (estimate) |
| 12/01 | N/A | 12/02 | N/A | 12/03 | N/A |

*See also* 2d Supp. Bonida Decl., Ex. E (summarizing number of hours worked with respect to the

Salinas High School District).

///

///

///

11

United States District Court

For the Northern District of California

d.      Summary of Unpaid Contributions

Taking into account the contribution rates above and the number of hours worked above, the Court concludes that the proper amount of unpaid contributions is **$115,278.03**.  That figure has been calculated as follows:

| Month | Rate | Quality Landscaping Hours | Salinas High School District Hours | Total |
|-------|------|---------------------------|------------------------------------|-------|
| **1/99** | $7.08 | 344.9 | | $2,441.89 |
| **2/99** | $7.08 | N/A | | |
| **3/99** | $7.08 | 300 | | $2124.00 |
| **4/99** | $7.08 | 102 | | $722.16 |
| **5/99** | $7.08 | 56.5 | | $400.02 |
| **6/99** | $7.08 | 225.8 | | $1598.66 |
| **7/99** | $7.44 | 59 | | $438.96 |
| **8/99** | $7.44 | 384.5 | | $2860.68 |
| **9/99** | $7.44 | 217.5 | | $1618.20 |
| **10/99** | $7.44 | 35 | | $260.40 |
| **11/99** | $7.44 | 415.5 | | $3091.32 |
| **12/99** | $7.44 | 419 | | $3117.36 |
| **1999 Total** | | | | **$18,673.65** |
| | | | | |
| **1/00** | $7.44 | 45.5 | | $338.52 |
| **2/00** | $7.44 | 1120.5 | | $8336.52 |
| **3/00** | $7.44 | 57.5 | | $427.80 |
| **4/00** | $7.44 | 291 | | $2165.04 |
| **5/00** | $7.44 | 228.5 | | $1700.04 |
| **6/00** | $7.44 | 361 | | $2685.84 |
| **7/00** | $7.76 | 189.5 | | $1470.52 |
| **8/00** | $7.76 | 219 | | $1699.44 |
| **9/00** | $7.76 | 533 | | $4136.08 |
| **10/00** | $7.76 | 545 | | $4229.20 |

| | | | | |
|---|---|---|---|---|
| **11/00** | $7.76 | 491 | | **$3810.16** |
| **12/00** | $7.76 | 886 | | **$6875.36** |
| **2000 Total** | | | | **$37,874.52** |
| | | | | |
| **1/01** | $7.76 | 115.5 | 192.86 (estimate) | $2392.87 |
| **2/01** | $7.76 | 218.5 | 44.23 (estimate) | $2038.78 |
| **3/01** | $7.76 | 394.5 | N/A | $3061.32 |
| **4/01** | $7.76 | 356.5 | N/A | $2766.44 |
| **5/01** | $7.76 | 657 | N/A | $5098.32 |
| **6/0** | $7.76 | 1017.5 | N/A | $7895.80 |
| **7/01** | $8.13 | 364.5 | 272 | $5174.75 |
| **8/01** | $8.13 | 411.5 | N/A | $3345.50 |
| **9/01** | $8.13 | 156 | 486.5 | $5223.53 |
| **10/01** | $8.13 | 430 | 61.5 | $3995.90 |
| **11/01** | $8.13 | 141.5 | 411.5 | $4495.89 |
| **12/01** | $8.13 | 466.5 | N/A | $3792.65 |
| **2001 Total** | | | | **$49,281.75** |
| | | | | |
| **1/02** | $8.13 | | N/A | |
| **2/02** | $8.13 | | N/A | |
| **3/02** | $8.13 | | 160 | $1300.80 |
| **4/02** | $8.13 | | 28.5 | $231.71 |
| **5/02** | $8.13 | | N/A | |
| **6/02** | $8.13 | | N/A | |
| **7/02** | $9.08 | | N/A | |
| **8/02** | $9.08 | | N/A | |
| **9/02** | $9.08 | | N/A | |
| **10/02** | $9.08 | | N/A | |
| **11/02** | $9.08 | | 61 | $553.88 |
| **12/02** | $9.08 | | N/A | |
| **2002 Total** | | | | **$2086.39** |

**United States District Court**

For the Northern District of California

| | | | | |
|---|---|---|---|---|
| **1/03** | $9.08 | | N/A | |
| **2/03** | $9.08 | | N/A | |
| **3/03** | $9.08 | | N/A | |
| **4/03** | $9.08 | | N/A | |
| **5/03** | $9.08 | | N/A | |
| **6/03** | $9.08 | | N/A | |
| **7/03** | $10.03 | | 191.5 | $1920.75 |
| **8/03** | $10.03 | | 71 | $712.13 |
| **9/03** | $10.03 | | N/A | |
| **10/03** | $10.03 | | N/A | |
| **11/03** | $10.03 | | 471.47 (estimate) | $4728.84 |
| **12/03** | $10.03 | | N/A | |
| **2003 Total** | | | | **$7361.72** |
| | | | | |
| **1999-2003 Total** | | | | **$115,278.03** |

*See also id.*, Ex. H (summarizing unpaid contributions).[4]

    2.       Interest on Unpaid Contributions After November 2002

    In addition to unpaid contributions, Plaintiffs have asked that they be awarded interest for those unpaid contributions after November 2002 (*i.e.*, for the months July, August, and November 2003). Prior to November 2002, there was no provision in the Trust Agreements for interest on unpaid contributions. *See* Leigh Decl. ¶ 21.

    The Court agrees that Plaintiffs are entitled to these damages pursuant to the Master Agreement for 2002-2006. *See* Donida Decl., Ex. C. Under this Master Agreement, delinquent contributions bear simple interest at the rate of 1.5% per month until receipt of payment. *See* Donida Decl., Ex. C. Interest is calculated from the twenty-fifth day after the month when the contributions were earned. *See id.* ¶ 16; *see also* Leigh Decl., Ex. D ("Each Contribution to the Fund will be made

---

    [4] The Court's final sum is slightly different from Plaintiffs' final sum ($115,279.98) because Plaintiffs did not always use the correct number of hours and instead did further rounding.

**United States District Court**

For the Northern District of California

promptly, and in any event on or before the 25th day of the calendar month in which it becomes payable, on which date the Contribution, if not paid in full, will be delinquent . . . .").

The unpaid contributions for July 2003 are $1,920.75; for August 2003, $712.13; and for November 2003, $4728.84.  Therefore, up to August 25, 2005, the total amount of interest owed is **$2466.23**.  This amount was determined as follows.

| **July 2003** | August 2003 to August 2005 (25 months) | $1,920.75 x 1.5% x 25 months = $720.28 |
| **August 2003** | September 2003 to August 2005 (24 months) | $712.13 x 1.5% x 24 months = $256.37 |
| **November 2003** | December 2003 to August 2005 (21 months) | $4728.84 x 1.5% x 21 months = $1489.58 |
| **Total** | | **$2466.23** |

After August 25, 2005, interest will continue to accrue at the rate of **$3.63** per day.  This amount was determined as follows:

| **July 2003** | $1,920.75 x 18%[5] = $345.74 per year |
| **August 2003** | $712.13 x 18% = $128.18 per year |
| **November 2003** | $4728.84 x 18% = $851.19 |
| **Total** | $1325.11 per year |
| | $1325.11 ÷ 365 days per year = $3.63 per day |

In sum, the Court recommends that Plaintiffs be awarded **$2466.23** in interest, which represents the interest up to August 25, 2005.  Thereafter, Plaintiffs should be awarded **$3.63** in interest per day.

3.      Liquidated Damages After November 2002

Under the Master Agreement for 2002-2006, Plaintiffs are entitled to not only interest on the unpaid contributions but also liquidated damages in the amount of $150 per month after November 2002.  As stated above, there are only three months after November 2002 for which there were unpaid contributions (that is, taking into account only the records from Quality Landscaping and the

---

[5] 1.5% per month x 12 months = 18%.

1  Salinas High School District): July 2003; August 2003; and November 2003.  Accordingly, Plaintiffs

2  have asked for -- and the Court recommends as appropriate -- liquidated damages in the amount of

3  **$450**.  *See* 2d Supp. Bonida Decl. ¶ 15.

4        4.     <u>Attorney's Fees and Costs</u>

5        Finally, Plaintiffs seek as damages their attorney's fees and costs.  *See* 29 U.S.C. §

6  1132(g)(2) (providing for reasonable attorney's fees and costs).

7          a.     <u>Attorney's Fees</u>

8        Ninth Circuit case law indicates that, under § 1132(g)(2) of ERISA, reasonable attorney's

9  fees are mandatory as opposed to discretionary.  *See Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th

10  Cir. 1983) (noting that § 1132(g)(2) "now makes the award of attorney's fees mandatory when the

11  trustees prevail in actions to enforce and collect benefit fund contributions").  Factors considered in

12  determining the reasonableness of a fee award under § 1132(g)(2) include (1) the degree of the

13  opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of

14  fees, (3) whether an award of fees would deter others from acting under similar circumstances, (4)

15  whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA

16  plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the

17  parties' positions.  *See Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980) (noting

18  factors to be considered in determining whether fees should be awarded as a discretionary matter

19  under § 1132(g)(1)); *Kemmis*, 706 F.2d at 997-87 (stating that § 1132(g)(1) factors can still inform

20  the reasonableness of an award under § 1132(g)(2)).  Reasonableness is also informed by the typical

21  *Hensley* lodestar/multiplier approach.  *See id.* at 998 (citing *Johnson* factors discussed in *Hensley*);

22  *see also Van Gerwen v. Guarantee Mut. Ins. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (applying the

23  *Hensley* lodestar/multiplier approach to determine reasonable attorney's fees under § 1132(g)(1)

24  instead of § 1132(g)(2)).

25        The Court has reviewed the hours and rates provided by counsel for Plaintiffs.  *See* Leigh

26  Decl. ¶ 29 & Ex. G (120.9 hours at rate of $225 per hour).  While the Court concludes that the rate of

27  $225 per hour is reasonable, it does not make the same conclusion with respect to the number of

28  hours.  More specifically, the Court disagrees with Plaintiffs that they are entitled to all of the 120.9

hours when part of that time was attributable to Plaintiffs' having sued the wrong defendant (*i.e.*, Mr. Haworth's son instead of Mr. Haworth). On the other hand, some of those hours should be charged to Mr. Haworth because, as indicated by the deposition of his son, Mr. Haworth has had knowledge of the lawsuit but tried to evade responsibility. *See generally* Leigh Decl., Ex. A (deposition of Mr. Haworth's son).

The Court recommends that Plaintiffs *not* be compensated for the following hours incurred because Plaintiffs sued the wrong defendant. In general, these constitute hours spent by Plaintiffs serving and seeking a default judgment against Mr. Haworth's son in spite of evidence suggesting that Mr. Haworth's son was not the correct defendant.

| 7/28/03 | 2.20 hours | Draft and revise Default Motion papers; telephone conf with Court Clerk |
|---------|-----------|------------------------------------------------------------------------|
| 10/1/03 | 1.70 hours | Work on response to Order re Service [filed on 9/26/03] |
| 10/1/03 | 0.80 hours | Received and reviewed Court Order; reviewed file documents |
| 10/28/03 | 0.80 hours | Received and reviewed Order notes for follow-up [filed on 10/28/03] |
| 11/7/03 | 0.30 hours | Reviewed Order; letter to Haworth |
| 11/18/03 | 0.30 hours | Telephone call from Judge Chen's clerk re submission pursuant to order; meeting with JPW re same |
| 11/18/03 | 4.40 hours | Telephone call to Balben Donida re source of records for defendant company; legal research re successor liability; prepare response to Court's 10/28/03 order; prepare declaration of Donida; prepare email to Donida |
| 11/24/03 | 0.40 hours | Received and reviewed correspondence re Default; meeting with Mazzola re same |

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

| 11/24/03 | 0.80 hours | Receive notification from court of filing by defendant; review defendant's 11/13/03 letter; prepare response letter to defendant; review defendant's submissions for his contact information; meeting with JPW re 11/13/03 letter; telephone call to Mark Haworth Jr. |
| 11/25/03 | 0.20 hours | Continue preparing letter to Haworth |
| **Total** | **11.90 hours** | |

The Court recommends that Plaintiffs be compensated for the remaining hours sought by Plaintiffs because the remaining hours are reasonable. For example, it was reasonable for Plaintiffs to take the deposition of Mr. Haworth's son (as expressly permitted by the Court) in order to determine who the correct defendant in the case should be, especially when the deposition revealed Mr. Haworth's attempt to evade responsibility. Further, it was reasonable for Plaintiffs to work with process servers to try to serve Mr. Haworth and the other entity defendants and then seek leave from Judge Wilken to serve Defendants by publication because they could not, with reasonable diligence, be located. In addition, it was reasonable for Plaintiffs to obtain and review documents from Quality Landscaping and the Salinas High School District because Defendants did not submit to an audit and such documents established the number of hours worked by Defendants' employees.

Accordingly, the Court recommends that Plaintiffs be awarded an hourly rate of $225 for 109 attorney hours (instead of 120.9), for a total of **$24,525**.

      b.    <u>Costs</u>

Section 1132(g)(2) of ERISA specifies that not only are attorney's fees recoverable but also costs. In *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996), the Ninth Circuit held that the allowance for costs under § 1132(g)(1) "empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920, and only in the amounts allowed by section 1920 itself, by 28 U.S.C. § 1821 [providing for witness fees] or by similar such provisions." *Id.* at 544. Given this was the Ninth Circuit's approach for § 1132(g)(1), it is reasonable to apply the same approach to §

1 1132(g)(2), which uses the same statutory language as § 1132(g)(1) (*i.e.*, "reasonable attorney's fees

2 and costs").

3       Plaintiffs therefore should be able to get as costs their filing fee, fees for service of process

4 and deposition transcript fees. *See* 28 U.S.C. § 1920; *see also* Civ. L.R. 54-3(a)(1) ("The Clerk's

5 filing fee is allowable if paid by the claimant."); Civ. L.R. 54-3(a)(2) ("Fees for service of process by

6 someone other than the marshal acting pursuant to FRCivP 4(c), are allowable to the extent

7 reasonably required and actually incurred."), Civ. L.R. 54-3(c)(1) ("The cost of an original and one

8 copy of any deposition . . . taken for any purpose in connection with the case is allowable.").[6]

9 However, other items identified by Plaintiffs do not fall under costs as defined by § 1920 (*e.g.*,

10 unidentified photocopies, deliveries, e-filing fees). *See* Leigh Decl., Ex. F. *See, e.g.*, Civ. L.R. 54-

11 3(d) ("The cost of reproducing copies of motions, pleadings, notices, and other routine case papers is

12 not allowable."). While the Trust Agreements provide that not only are costs recoverable but also

13 reasonable expenses, § 1132(g)(2) provides only for the former, not the latter. *See* 4AC ¶ 26

14 (seeking costs pursuant to § 1132(g)(2); *see also Aetna*, 223 F.3d at 1034 (9th Cir. 2000) (noting that

15 ERISA preempts state law claims that "relate to" employee benefit plans, such as breach of contract;

16 citing 29 U.S.C. § 1144(a)).

17       Accordingly, the Court recommends that Plaintiffs be awarded costs in the amount of

18 **$2,563.22**.  This amount excludes the expenses incurred for unidentified photocopies, deliveries, and

19 e-filing fees.

20 E.    Injunctive Relief

21       In their complaint, Plaintiffs seek as relief not only damages but also injunctive relief -- more

22 specifically, an injunction compelling Defendants to submit to an audit of their books and records.

23 Plaintiffs have alleged in their complaint that an audit of Defendants' books and records is permitted

24 under the Trust Agreements so that Plaintiffs may determine the amount of trust fund contributions

25

26

27 ────────────────

        [6] *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987) ("We think the

28 better view is that § 1920 defines the term 'costs' as used in Rule 54(d).  Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d).").

1   due and owing.  *See* 4AC ¶¶ 29-30.  In support of their motion for default judgment, Plaintiffs have

2   provided a copy of a Trust Agreement, which provides as follows:

> Upon request in writing from the Board, any Individual Employer will
> permit a Trust Fund Auditor to enter upon the premises of such
> Individual Employer during business hours, at a reasonable time or
> times, not less than two (2) working days after such request, and to
> examine and copy such books, records, papers, or reports of such
> Individual Employer as may be necessary to determine whether the
> Individual Employer is making full and prompt payment of all sums
> required to be paid by him or it to the Fund.

8   Leigh Decl., Ex. E.

9        Accordingly, the Court recommends that an injunction be issued compelling Defendants to

10  submit to an audit of its books and records as provided for by the relevant Trust Agreements.  *See* 29

11  U.S.C. § 1132(g)(2) (providing for damages such as unpaid contributions, interest, liquidated

12  damages, and attorney's fees and costs as well as "other appropriate legal or equitable relief").

13  F.   <u>Post-Judgment Interest and Attorney's Fees and Costs Incurred in Enforcing Judgment</u>

14       Finally, the Court addresses Plaintiffs' request for post-judgment interest and attorney's fees

15  and costs incurred in enforcing the judgment.

16       1.   <u>Post-Judgment Interest</u>

17       Title 28 U.S.C. § 1961 is the statute providing for post-judgment interest.  It states that

18  "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28

19  U.S.C. § 1961.  Plaintiffs, therefore, should be awarded post-judgment interest.  The proper interest

20  rate is that provided for in § 1961, with one exception, namely, for that part of the judgment

21  consisting of the unpaid contributions after November 2002.  Parties are allowed to contract to a

22  post-judgment interest rate different from that specified in § 1961.  *See Society of Lloyd's v.*

23  *Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005) ("[W]e acknowledge that parties may contract to, and

24  agree upon, a post-judgment interest at a rate other than that specified in § 1961."); *Fidelity. Fed.*

25  *Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) ("An exception to § 1961 exists

26  when the parties contractually agree to waive its application.  In *Citicorp*, the promissory notes at

27  issue included an express, mutually-agreed upon interest rate in the case of default.  The parties also

28  stipulated to a certain arbitration award provided that interest would accrue at the rate specified in

**United States District Court**

For the Northern District of California

1  the promissory note after the judgment until collection."). In this case, the parties agreed to an

2  interest rate for the unpaid contributions after November 2002 of 1.5% per month. As Plaintiffs

3  point out, this rate was to apply *until the obligation was paid*, and not merely until judgment. *See*

4  Donida Decl., Ex. C ("Any Individual Employer who is found to be delinquent as a result of an audit

5  will pay and satisfy such delinquency with accrued interest and in addition pay liquidated damages.

6  All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%)

7  per month *until receipt of payment*.") (emphasis added).

8       Thus, the Court recommends that all of the judgment be subject to the interest rate specified

9  in § 1961 except for that part of the judgment consisting of the unpaid contributions after November

10 2002 -- totaling $7361.72 (*i.e.*, total unpaid contributions for July, August, and November 2003) --

11 which shall accrue interest at the rate of 1.5% per month or 18% per year.

12       2.  Attorney's Fees and Costs Incurred in Enforcing Judgment

13       As for Plaintiffs' request for the attorney's fees and costs incurred in enforcing a judgment,

14 the Court considers the request premature in light of the fact that no judgment has issued as of yet

15 and thus no enforcement efforts or proceedings have begun. Plaintiffs may raise this issue when

16 such fees and/or costs have actually been incurred.

17              **III.   CONCLUSION**

18       For the foregoing reasons, the Court recommends that Plaintiffs' motion for default judgment

19 be granted and that Plaintiffs be awarded damages consisting of (1) the unpaid contributions

20 (**$115,278.03**); (2) interest on the unpaid contributions after November 2002 (**$2466.23**, as of August

21 25, 2005, plus **$3.63** per day thereafter); (3) liquidated damages after November 2002 (**$450**); and

22 (4) reasonable attorney's fees (**$24,525**) and costs (**$2,563.22**). Furthermore, the Court recommends

23 that post-judgment interest be awarded to Plaintiffs at the rate provided for in § 1961 for all of the

24 judgment *except* for the unpaid contributions after November 2002 ($7361.72), for which the proper

25 interest rate should be 1.5% per month or 18% per year.

26       In addition, the Court recommends that an injunction be issued consistent with the audit

27 provision contained in the Trust Agreements.

28

United States District Court

For the Northern District of California

1    Finally, the Court recommends that Judge Wilken retain jurisdiction over the case so that she

2  may entertain a motion for a further money judgment against Defendants for additional damages that

3  may be discovered by the audit.  As noted above, Plaintiffs' request for damages in their motion for

4  default judgment is based on the records of only Quality Landscaping and the Salinas High School

5  District.  *See Walter v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS

6  11992, at *11-2 (N.D. Cal. Apr. 15, 2004) (awarding, *inter alia*, unpaid contributions and ordering

7  defendant to submit to audit under conditions expressed in trust agreements; adding that "[p]laintiffs

8  shall *not* have the power to amend this Court's judgment following the audit" but that the "Court

9  retains jurisdiction over this case with regard to contributions and damages determined owed to

10  plaintiffs during the audit") (emphasis added); *see also International Union of Operating Eng'rs-*

11  *Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1431-32

12  (9th Cir. 1993) (holding that "an action to recover *accurate* contributions arises from the same

13  transactional nucleus of facts as a prior action to recover *delinquent* payments and is barred under the

14  doctrine of res judicata") (emphasis added).

15    Any party may file objections to this report and recommendation with the district judge

16  within ten days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b);

17  Civil L.R. 72-3.

19  Dated: August 24, 2005

21  EDWARD M. CHEN
United States Magistrate Judge